FARMERS & MERCHANTS NATIONAL BANK OF FREMONT ET AL., APPELLEES, V. SHERMAN D. WORDEN ET AL.; MARGARET WORDEN, APPELLANT.

FILED DECEMBER 3, 1915. No. 18450.

Fraudulent Conveyances: PARENT AND CHILD: BURDEN OF PROOF. Where a transfer of personal property from a son to his mother in payment of a past-due indebtedness is attacked by judgment creditors as

fraudulent, the burden is upon the transferee to show that the indebtedness was genuine, that the transaction was honest and that the transfer was made in good faith, but where these facts are shown by uncontradicted testimony of the parties to the transfer and appear to be reasonable and to be consistent with honesty and fair dealing, when considered with surrounding conditions and circumstances, it may be upheld.

APPEAL from the district court for Boone county: GEORGE H. THOMAS, JUDGE.  *Reversed, with directions.*

*Frank D. Williams, J. A. Price* and *C. J. Campbell,* for appellant.

*M. B. Foster, A. E. Garten* and *W. J. Courtright, contra.*

ROSE, J.

By means of a bill of sale reciting the consideration to be $3,680.05, Sherman D. Worden, defendant, transferred to his mother, Margaret Worden, defendant, personal property, consisting of cattle, grain and farm implements. Plaintiffs are judgment creditors of the transferor. The present action was brought for the purpose, among others, of subjecting to the payment of the judgments in favor of plaintiffs the property described in the bill of sale. The transferee defended the action on the ground that the transfer to her was made in good faith, for a valuable consideration, without any intention of defrauding creditors of transferor or of hindering or delaying them in the collection of their claims. The trial court rendered a decree in favor of plaintiffs, and the transferee has appealed.

What a court of equity should decree under the evidence is the question presented by the appeal. With a view to reaching a correct conclusion, the testimony has been considered from every standpoint in the light of all of the circumstances proved, without finding any justification for setting aside the transfer. The bill of sale was executed January 28, 1911. The judgments at law on which the creditors' bill is based were not rendered until July 26, 1911. Uncontradicted testimony of the parties to the

bill of sale tends to establish the following facts: From 1905 to 1910 the transferor, as tenant under an oral lease, lived with his father and mother on their homestead, consisting of a farm in Boone county. During the first and second years of the tenancy the crops were to be divided. For the remainder of the five-year period, the agreed rental, payable to the father of the tenant, was $500 a year in cash. The son had agreed to pay his mother for boarding him and his hired men $12 a month each. He sold live stock belonging to her and owed her the value thereof. During the five-year tenancy, he incurred an indebtedness to his mother aggregating about $1,800, which remained unpaid at the date of the transfer. He failed to pay his father the agreed rental, but executed and delivered to him a note for $1,850, November 10, 1910. His father died November 30, 1910. On his deathbed he handed the note to his son, and directed him, in case anything happened, to pay it directly to his mother. Early in December, following the death of the father, the son handed to his mother an envelope containing the note, saying it was something belonging to her. She preserved it, not knowing what it was until some time later. The note itself is in the record. The day before the son signed the bill of sale he executed in favor of one of his creditors a renewal note for $3,680.05. This note was signed by his mother as surety upon his promise to deed to her an estate in remainder in 80 acres of land devised to him by his father and to pay his existing indebtedness to her. Pursuant to this agreement she became surety on his renewal note, and he, for the expressed consideration of $3,680.05, conveyed to her his interest in the realty described. In addition, the mother testified that, a week before the bill of sale was executed, she had talked with her son about transferring his personal property to her, that he had said he would give her a bill of sale to indemnify her for signing his note, and that they had also talked about the unpaid board bill. This uncontradicted evidence is convincing proof of the son's indebtedness to his

mother, of the sufficiency of the consideration for the bill of sale, and of the good faith of the parties to it. The incurring of debts, the signing of notes, and the giving of security were familiar practices of the transferor. It is not strange that his mother became his creditor, or that she allowed his obligations to run for years, or that he was willing to indemnify her against loss. Though she did not know of the existence of the note for rental, when the bill of sale was executed, her son had been directed to pay her the amount due thereon, and in good faith attempted to comply with his obligation and to protect her rights by the transfer of personal property. The undisputed evidence tending to show the absence of fraud and the validity of the transfer is not overcome by the inferences arising from the relationship of the parties, from the claims of plaintiffs, and from the other circumstances calling for judicial scrutiny.

It follows that the decree, in so far as it invalidates the bill of sale and makes Margaret Worden liable to plaintiffs for individual debts of her son, Sherman D. Worden, is reversed, with a direction to the district court to enter a judgment conforming to the views here expressed.

REVERSED.

SEDGWICK, J., not sitting.